**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID E. SIDELINGER,      ) | Civil Action No. 02-62 ERIE |
|                           ) | Judge Maurice B. Cohill, Jr. |
| Plaintiff,                ) | |
|                           ) | |
| v.                        ) | ELECTRONICALLY FILED |
|                           ) | |
| HARBOR CREEK SCHOOL DISTRICT, ) | |
|                           ) | |
| Defendant.                ) | |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF DEFENDANT, HARBOR CREEK SCHOOL DISTRICT

### PROPOSED FINDINGS OF FACT

1.  In order to further Harbor Creek School District's ("District") compelling interest in preserving and enhancing school safety, beginning in March 2000, Mr. Sidelinger and all other Harbor Creek High School teachers were required to display a photo identification badge at school, allowing for instantaneous identification of employees of the District.

2.  The District's photo identification badge program, including its requirement that teachers display photo identification badges, enhances the security of its schools, which helps protect its students, employees and visitors from a variety of serious risks.

3.  The District's Administration reasonably attempted to convince Mr. Sidelinger to comply with the photo identification badge policy but did not require him to alter any of his religious beliefs. The District did not act with malice toward the religious beliefs of Mr. Sidelinger or any other employees when it instituted the photo identification badge policy.

4. Beginning on approximately March 2, 2000, Mr. Sidelinger refused to be photographed for his photo identification badge.

5. On March 10, 2000, District Superintendent Dr. David Smith advised Mr. Sidelinger that the two of them, plus Mr. Sidelinger's union/association representative, would meet on March 13, 2000 to discuss the District's requirements and Mr. Sidelinger's alleged religious beliefs.

6. Mr. Sidelinger refused to report to school beginning March 13, 2000 through March 31, 2000, when he was suspended.

7. Mr. Sidelinger's unscheduled absence, without notice to the District, on March 14, 2000, resulted in his classroom of students being left unsupervised during several periods.

8. In spite of numerous requests by the District's Administration for Mr. Sidelinger to send his students' grades to him, Mr. Sidelinger failed to do so adequately.

9. Mr. Sidelinger's objections to the photo identification badge requirement, whether they were to having his photograph taken or to displaying an identification badge, were not based upon a sincerely held religious belief, but on his personal aversions and preferences and his general animosity toward the District's Administration. The insincerity of Mr. Sidelinger's claimed religious beliefs is, in part, evidenced by his posting his picture on internet dating sites.

10. Mr. Sidelinger admitted the insincerity of his claimed religious beliefs to Heather Willey on several occasions in late 2001 and early 2002.

11.  The Roman Catholic religion, to which Mr. Sidelinger ascribed his beliefs in his April 7, 2000 e-mail to the District's Administration, does not require its members to refrain from having their photographs taken or to avoid displaying photo identification badges.

12.  The School Board notified Mr. Sidelinger via its April 11, 2000 notice of charges that it was going to conduct a hearing regarding his termination for refusing to participate in the District's photo identification badge program, being absent without leave or justification from March 14, 2000 through March 31, 2000, and for refusing to supply requested information regarding students' grades.

13.  At Mr. Sidelinger's April 24, 2000 School Board hearing, he was specifically asked and encouraged by the District's legal counsel, Mark Wassell, and Board Member, John Hamilton, to articulate what his religious beliefs were and how they conflicted with the wearing of a photo identification badge.  Mr. Sidelinger overtly refused to provide any meaningful explanation, stating that it was "neither the place for the time to discuss religious beliefs," preferring instead to plead "the fifth" and to defer the matter to a "legal battle."

14.  Mr. Sidelinger offered no defense to the charges set forth in the April 11, 2000 notice of charges at his April 24, 2000 School Board termination hearing.

15.  Mr. Sidelinger was terminated from his employment with the District by the School Board on May 1, 2000 for the three distinct reasons set forth in the School Board's findings of fact and conclusions of law of that date.

16.  Had Mr. Sidelinger reported to work when scheduled, complied with the District's requirement that he display a photo identification badge, and met the District's

3

requirements regarding his attendance and production of student grades, he would not have been terminated.

17.   Mr. Sidelinger's statements and very limited explanations regarding his alleged religious beliefs, and the reasons the photo identification badge policy allegedly conflicted with those beliefs, were inadequate, such that the District's School Board could not assess the nature or sincerity of his alleged religious beliefs or assess whether his alleged religious beliefs could be accommodated without affecting adversely the District's school safety.  Mr. Sidelinger's claim in his April 7, 2000 e-mail that he was "a very old fashion latin Roman Catholic" added confusion, not clarity, to the District's efforts to understand his claimed religious beliefs.

18.   The District was unable to accommodate Mr. Sidelinger's objections to the photo identification badge requirement without enduring an undue burden. Mr. Sidelinger's suggestion that he carry his identification badge in his wallet would not have enabled quick, non-confrontational identification of Mr. Sidelinger as an employee. Also, if District employees maintained their identification badges in their wallets, students would not be able to distinguish employees from unauthorized persons during emergencies.  Further, employees who might exploit or otherwise harass students would not be as deterred if they were not required to display their photo identification badge.  Additionally, given Mr. Sidelinger's refusal to have his photograph taken, any such identification would not have displayed a photographic image of Mr. Sidelinger, thereby completely thwarting virtually all of the benefits of the District's photo identification badge policy.

19. Even if Mr. Sidelinger held a sincere religious belief that was in conflict with wearing a photo identification badge, it did not prevent him from coming to work, providing advance notice and/or medical substantiation for his absence on March 14th and thereafter or from providing the District with his grade book when requested to do so.

20. Mr. Sidelinger has failed to produce any evidence that the District's termination of him for his failure to telephone the District in advance of his absences, his failure to medically verify his need to be absent, or his refusal to provide information regarding his students' grades was pretextual for religious discrimination.

21. Mr. Sidelinger failed to mitigate his alleged damages by reasonably attempting to locate suitable alternative employment.

22. Mr. Sidelinger's tax returns from at least 1998 through 2005 do not accurately reflect the income he earned following his May 1, 2000 termination from Harbor Creek School District.

23. Mr. Sidelinger has offset his wage loss and related pecuniary losses by profitably selling merchandise on eBay and otherwise, and by working as a construction and renovation contractor.

**PROPOSED CONCLUSIONS OF LAW**

1.  Under 42 U.S.C. s 2000e-2(a)(1), it is unlawful for an employer to "fail to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion."

2.  In order to prevail in this case, Mr. Sidelinger must first establish each of the following elements of his **prima facie** case by a preponderance of the evidence:

    a.  He held a sincere religious belief that conflicted with a job requirement;

    b.  He informed the District about the conflict; and

    c.  He was terminated for failing to comply with the conflicting employment requirement.

Shelton v. University of Medicine & Dentistry of New Jersey, 223 F.3d 220 (3d Cir. 2000); Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 133-34 (3d Cir. 1986).

**Sincere Religious Beliefs**

3.  "[A]n employee is not permitted to redefine a purely personal preference or aversion as a religious belief." Because Mr. Sidelinger's aversion to wearing the identification badge was based upon personal preference or aversion, rather than upon a sincerely held religious belief, Mr. Sidelinger has not satisfied the first element and may not recover.

Reed v. The Great Lakes Companies, Inc., 330 F.3d 931, 935 (7th Cir. 2003).

4.   Any religious beliefs held by Mr. Sidelinger did not conflict with the requirement that he wear an identification badge and therefore Mr. Sidelinger has not satisfied the first element of his prima facie case.

5.   A mere "conclusory assertion" that one's religion requires one to disobey employment rules or requirements is insufficient to prove a sincerely held religious belief.

Hussein v. The Waldorf-Astoria, 134 F. Supp.2d 591, 596-97 (S.D.N.Y. 2001).

6.   It is reasonable to infer from Mr. Sidelinger's admissions and his posting of his picture on internet dating sites that his claimed religious beliefs implicated by the District's photo identification badge requirement are not sincerely held.

**Notice to the District of Mr. Sidelinger's Religious Beliefs Allegedly at Issue**

7.   The District cannot be liable to Mr. Sidelinger because Mr. Sidelinger did not put the District on notice that his alleged religious beliefs conflicted with an employment requirement with a meaningful level of specificity.

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996).

8.   "Implicit within plaintiff's prima facie case is the requirement that plaintiff inform his employer of both his religious needs and his need for an accommodation."

Redmond v. GAC Corp., 574 F.2d 897, 901 (7th Cir. 1978).

9.   "The employee has the duty to inform his employer of his religious need so that the employer has notice of the conflict."

Redmond v. GAC Corp., 574 F.2d 897, 902 (7th Cir. 1978).

7

10. An "employee who is disinterested in informing his employer of his religious needs may forego the right to have his beliefs accommodated by his employer."

Redmond v. GAC Corp., 574 F.2d 897, 902 (7th Cir. 1978).

11. The proper issue is whether Mr. Sidelinger made the School District "aware, *prior* to [his violation of the identification badge requirement], that [his] religious beliefs would require [the violation]."

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1021 (4th Cir. 1996). See also Hussein v. The Waldorf-Astoria, 134 F. Supp.2d 591, 597 (S.D.N.Y. 2001).

12. "[G]iving notice … at the same time as an employee violates employment requirements is insufficient to provide adequate notice to the employer and to shield the employee's conduct."

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1020 (4th Cir. 1996).

13. "Part of the advance notice requirement is to allow the [employer] to avoid or limit any 'injury' an employee's religious conduct may cause."

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1020 (4th Cir. 1996).

14. "Title VII imposes a duty on the employer but also a reciprocal duty on the employee to give fair warning of the employment practices that will interfere with his religion and that he therefore wants waived or adjusted."

Reed v. The Great Lakes Companies, Inc., 330 F.3d 931,935 (7th Cir. 2003).

15. Mr. Sidelinger had a duty to cooperate with the District in the attempt to find an accommodation; an employer cannot be expected to accommodate an employee where "the manner in which [the employee] presented the issue … only

enhanced the difficulty in accommodating him because granting an exception could have interfered with [the employer's] ability to manage other … staff."

<u>Hussein v. The Waldorf-Astoria</u>, 134 F. Supp.2d 591, 598 (S.D.N.Y. 2001).

16. An employee's refusal to cooperate in order to attempt to resolve and reach an accommodation results in a failure of the employee's duty and prevents recovery.

<u>Shelton v. University of Medicine & Dentistry of New Jersey</u>, 223 F.3d 220, 227-28 (3d Cir. 2000).

17. "An employee cannot shirk his duties to try to accommodate himself or to cooperate with his employer in reaching an accommodation by a mere recalcitrant citation of religious precepts. Nor can he thereby shift all responsibility for accommodation to his employer. Where an employee refuses to attempt to accommodate his own beliefs or to cooperate with his employer's attempt to reach a reasonable accommodation, he may render an accommodation impossible."

<u>Chrysler Corp. v. Mann</u>, 561 F.2d 1282, 1285 (8th Cir. 1977).

18. Mere behavior of an employee or merely informing an employer that absences are due to religion are insufficient to explain the employee's religious needs to the employer.

19. "[A]ccommodation is not so onerous as to charge an employer with the responsibility for continually searching for each potential religious conflict of every employee."

<u>Redmond v. GAC Corp.</u>, 574 F.2d 897, 902 (7th Cir. 1978).

20. "There is a line, indistinct but important, between an employee who seeks an accommodation to his religious faith and an employee who asserts…an unqualified right to disobey orders that he deems inconsistent with his faith though **he refuses to indicate at what points that faith intersects the requirements of his job**." [Emphasis added].

Reed v. The Great Lakes Companies, Inc., 330 F.3d 931,935 (7th Cir. 2003).

21. It is insufficient for an employee to merely advise the employer that he or she is of a particular religion; rather, it is the employee's duty to advise the employer specifically of what his or her religious beliefs are and how the employer's requirements conflict with those beliefs. "Knowledge that an employee has strong religious beliefs does not place an employer on notice that [he or] she might engage in any religious activity, no matter how unusual."

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1020 (4th Cir. 1996).

### Reason for Termination

22. An employee does not meet the "adverse employment action" prong if the employee was terminated, not because of his religion, but because of his refusal to comply with an employment requirement, particularly where the employee fails or refuses to advise the employer of his religious beliefs.

Storey v. Burns International Security Services, 390 F.3d 760, 764 (3d Cir. 2004).

23. In order to satisfy the third element of his case, Mr. Sidelinger must demonstrate that he was terminated "because of" his refusal to comply with the District's photo identification badge requirement that conflicted with his religious beliefs. If Mr. Sidelinger was terminated due to reasons other than his refusal to wear an

identification badge, then Mr. Sidelinger's termination was not "because of his religion." Mr. Sidelinger has not demonstrated that his failure to wear an identification badge was the determinative factor for the District's decision to terminate him; in other words, that he would not have been terminated but for the District's consideration of the fact that Mr. Sidelinger refused to comply with the photo identification badge requirement. Mr. Sidelinger has not established that the District's claims that his termination was motivated by his unauthorized and unsubstantiated leave of absence from March 14th through March 31st and his refusal to supply information necessary to calculate student grades were pretextual. Therefore, Mr. Sidelinger's claim must fail.

Shelton, 223 F.3d at 224; EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002); EEOC v. United Parcel Serv., 94 F.3d 314, 317 (7th Cir. 1996); Lewis v. University of Pittsburgh, 725 F.2d 910, 915 (3d Cir. 1983).

24.     The Board of School Directors was only permitted to consider evidence presented to it at the April 24, 2000 termination hearing. Any evidence not presented at the termination hearing, but which was later presented, is irrelevant for the purposes of determining whether the Board of School Directors terminated Mr. Sidelinger for the reasons set forth in its May 1, 2000 findings of fact and conclusions of law.

Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1029 (7th Cir. 1998); Hook v. Ernst & Young, 28 F.3d 369-70 (3d Cir. 1994); Michael I. Levin, Pennsylvania Personnel School Actions, § 5.5(M) (2003), citing Zinman v. Commonwealth Department of Insurance, 42 Pa. Cmwth. 270, 400 A.2d 689 (1979).

11

**District Defenses**

25.  In the event Mr. Sidelinger had established a prima facie case, the District would avoid liability if it shows that Mr. Sidelinger's request for a reasonable accommodation, i.e., not displaying a photo identification badge, could not be permitted without causing it undue hardship.

United States v. Board of Education for School District of Philadelphia, 911 F.2d 882, 886-87 (3d Cir. 1990); Shelton v. University of Medicine & Dentistry of New Jersey, 223 F.3d 220 (3d Cir. 2000).

26.  If an employer cannot accommodate a religious practice without undue hardship, the practice is not 'religion' within the meaning of Title VII.

United States v. Board of Education for School District of Philadelphia, 911 F.2d 882, 886 (3d Cir. 1990).

27.  If a Defendant is unable to reasonably accommodate an employee's religious beliefs without undue hardship, the Plaintiff may not recover. Undue hardship occurs whenever an accommodation would result in more than a *de minimus* cost to an employer.

Trans World Airlines v. Hardison, 432 U.S. 63, 84, 97 S.Ct. 2264, 2277, 53 L.Ed.2d 113 (1977); Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 134 (1st Cir. 2004).

28.  Undue hardship may be found where there is more than a *de minimus* cost, either economic or non-economic.

<p style="margin-left:2em">Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 134 (1st Cir. 2004); United States v. Board of Education for School District of Philadelphia, 911 F.2d 882, 887 (3d Cir. 1990).</p>

29.  Undue hardship is not difficult to establish; it is a much lower standard than compelling state interest.

United States v. Board of Education for School District of Philadelphia, 911 F.2d 882, 890 (3d Cir. 1990).

30.  The District has a compelling interest in preserving the safety and security of its schools.

Wisconsin v. Yoder, 406 U.S. 205, 213, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972); Knox County Educ. Assoc. v. Knox County Board of Educ., 158 F.3d 361, 374-75 (6th Cir. 1998).

31.  The only potential accommodations proposed by Mr. Sidelinger, i.e., carrying a non-photo identification badge in his wallet, would have caused an undue burden on the District because it would undermine its important school safety goals.

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1020 (4th Cir. 1996).

32.  Because the accommodations proposed by Mr. Sidelinger would result in undue hardship to the District, the proposed accommodations are unreasonable as a matter of law, and Mr. Sidelinger's alleged religious beliefs are not a "religion" within the meaning of Title VII.

Daniels v. City of Arlington, Texas, 246 F.3d 500, 506 (5th Cir. 2001).

33.  Because the District's interest in school security and safety is compelling, and because school security would be compromised by accommodating Mr. Sidelinger's

objections to the photo identification requirement, the District has proven that Mr. Sidelinger's requested accommodation is "reasonable" and therefore Mr. Sidelinger cannot recover.

## AFFIRMATIVE DEFENSES

34.  Mr. Sidelinger failed to mitigate his alleged damages by reasonably attempting to locate alternative employment following his May 1, 2000 termination by the District.

35.  Mr. Sidelinger has offset his wage loss and related pecuniary losses by profitably selling merchandise on eBay and otherwise, and by working as a construction and renovation contractor following his May 1, 2000 termination by the District.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

BY: /s/    Mark J. Kuhar
Mark J. Kuhar, Esq.
120 West Tenth Street
Erie, Pennsylvania 16501-1461
Phone: (814) 459-2800
Fax: (814) 453-4530
E-mail: mkuhar@kmgslaw.com
Bar No.: PA71185

Attorneys for Defendant,
Harbor Creek School District

# 612235

14